May it please the court. My name is Karen Hanks, and I represent SFR Investments Pool 1, LLC. I'd like to reserve five minutes of my time for rebuttal. The panel asked two questions prior to coming to oral argument. First, whether there was an issue of fact as to delivery of tender, and two, what evidence creates this issue of fact? The answer is simple. Yes, there is an issue of fact as to delivery of tender. And with respect to the evidence, it's more the absence of evidence in this case. We know that when Miles Bauer tendered, there would be three pieces of evidence that would exist that would prove delivery. First, we know from the testimony of Doug Miles that there'd be a log where the employee would have entered for that particular file where they were to hire the runner. That's at excerpts of record 357. Second piece of evidence, or sorry, back up, that piece of evidence was never produced in this case. The second piece of evidence, there'd be a carbon copy of the legal wings run slip. That was the name of the runner that they used. And they would save that run slip in that file. Excuse me, there was some evidence in the record, I think, in the Miles declaration or in his testimony that the firm sometimes, but not the run slips in the files. Your Honor, according to Doug Miles' testimony at excerpts of record 357, he said that was the policy and procedure. Okay, so he then says, but they don't always do it. They don't necessarily do it at 358. So you have those two pieces of evidence. Correct. And I guess in terms of a trier fact, they could weigh the credibility that if that's your policy and procedure, then how likely can I believe you either didn't follow it here or you just don't have evidence that you delivered it. So it's a trier fact. The final piece of evidence that we should have based on the policy and procedure is that in instances involving NAS, in instances where they decided or determined they couldn't accept the check, they would hand it back, the check and the letter, to the runner. And because of that, Miles Bauer had a policy of stamping the check voided and then scanning and saving that into the system for the file. That's at excerpts of record 358. We do not have that evidence in this case. So it's the culmination of the absence of this evidence that creates the issue of fact as to delivery. And recently, the Nevada Supreme Court, in the case that we cited on page 12 of our reply brief, Bank of America versus Las Vegas Rental Repair, the Nevada Supreme Court found that the absence of the courier slip did, in fact, create an issue of fact. And here we've shown you, your honors, three pieces of evidence that are missing. So it's even more than that case. Now, counsel argued in the brief that the entries in the pro-law screenshot were enough to show that the check was delivered. Unfortunately, Bank counsel's argument is just that. It's argument of counsel. It is not evidence. And he cites no testimony to support his interpretation of those screenshots. And when we look at Rock Young, the author of the letter, he contradicts the interpretation the bank gives those screenshot entries. If you look at the excerpts of record 377 and 378, Mr. Young testified that those entries are not memorializations of actual events happening on those dates, but rather they're ticklers or reminders that are entered before those dates even occur. I specifically asked him, so what I'm getting at is this notation we see in all caps, 10-5 CHECK RETURNED. That is not a notation to indicate that on this date, 10-5, 2012, the check was returned, right? And his answer is correct. So this CHECK RETURNED, we have the 10-7 CHECK RETURNED on our pro-law screenshot in this case. That is something that was entered well before 10-7 as a reminder to possibly follow up. It is not a memorialization of on 10-7, the check was rejected. What further kind of confirms that, well, it's not needed, but what further confirms that is you'll note that the tender letter, the letter with the check is dated September 22nd, not 10-7. So if they were actually delivering it via runner, which we know they did, and NAS had the policy of determining at the time the runner was there, whether they could accept or reject it, if that note really was a memorialization, then it should be dated 9-22. So that makes sense what Mr. Young testified to. So frankly, the Bank's Counsel argument is just that. It's argument. There is absolutely no evidence in this case of delivery, and at the very least, a trier of fact should have heard this, should have had the opportunity to argue this to a trier of fact, and they should have been able to determine, is there enough here to conclude delivery? And I'll end on this note. We have a presumption in Nevada at NRS 47-2503 that if weaker and less satisfactory evidence is offered, when it is within the power of the party to produce stronger and more satisfactory evidence, the evidence offered should be viewed with distrust. And I position this. We don't even have less satisfactory evidence. We have no evidence. And so a trier of fact should have been able to weigh that presumption, weigh the arguments of the lack of evidence based on the policy and procedures of Miles Bauer, and been able to... Well Counsel, let me interrupt you now. All the arguments you're making is, you know, when the court or the jury decides a contested issue of fact, but here we're on summary judgment. So none of that comes into play, does it? That's my point, your honor. That's where I think the district court erred. The judge could not decide this summarily. There was nothing for him to look at to say no reasonable minds upon hearing about the policies and procedures of Miles Bauer and the utter absence of evidence of delivery, coupled with the presumption we have in Nevada about lesser satisfactory evidence, that no reasonable mind could differ and only find that it was delivered. That's exactly why I believe that you should reverse and remand, your honor. With that, if there's no further question... I wanted to just be sure I understand your argument. You are not seeking summary judgment on your behalf. You are simply saying there's a genuine issue of material fact that precluded summary judgment for the other side, correct? Yes, your honor. Yes, your honor. The procedural posture of this case was the bank was the only party who filed a motion for summary judgment. Now, I will say, I would like to go as far as to say because they bear the burden of proof and they're not going to be able to bear the burden of proof in terms of delivery. Judgment could be entered, but as the procedural posture, I am at this point saying there's just clearly an issue of fact that precluded summary judgment in favor of the bank. Yes, your honor. Thank you, counsel. You may reserve the rest of time if you wish. Thank you. I would like to do that. Good morning, your honors. My name is Aaron Chassain. I represent Appalese. Your honors, we're asking, of course, that the summary judgment be affirmed. And I want to start by quoting from a decision from this court. It's the International Union of Bricklayers versus Martin Joska. It's 752 F. Second 1401. This court held that appellants may not upset an adverse summary judgment by raising an issue of fact on appeal that was not plainly disclosed as a genuine issue before the trial court. I want to start there, your honors, because we are putting a tremendous amount of weight on 10 words. That's how much space SFR used in its opposition to the to cover all of the arguments that you're hearing this morning, specifically on page 118 of the record excerpts. SFR had three sentences about a disputed fact, but I think only one of those actually bears on what we're talking about right now. SFR said without any citation to this mouth or to Doug Miles testimony, to Rock Young's testimony, just a plain sentence, no run slip or certificate of milling had been produced. That was it in the trial court. Counsel, I have a question for you. I am doing this from memory, so I may be mistaken. I did not recall that your answering brief in this court argued that this issue was unpreserved. Am I right about that? Your honor, I believe we did argue waiver on this, and I'll be happy to reference my brief. I apologize. We have so many of these that I get them mixed up with each other at times. I understood, your honor, and I apologize if I'm mistaken. Well, on my part as well, would you respond to the merits of the argument since time is short? Of course, your honor. So on the merits, I think this is a case about the summary judgment standard, and I say absolutely that the appellees met their initial burden of moving for summary judgment by presenting a prima facie case that the tender check was delivered to NAS. The Miles file records demonstrate the Nevada case that is very similar to this that held that there was a genuine issue of material fact. Are you saying it was wrongly decided? Your honor, I would say it can be distinguished, and in the alternative, if you believe it can't be distinguished, it was wrongly decided, and I'm happy to explain that case. So first of all, of course, to state the obvious, it's an unpublished panel decision from Nevada. It's not binding on this court. It's not binding on the Nevada Supreme Court, and there's context behind why it might be unpublished. In that case, there's a grant of summary judgment in favor of the HOA purchaser that went up on appeal in between the time the trial court judge granted summary judgment, and when it was considered on appeal, the trial court judge became one of the justices on the Nevada Supreme Court. The three panelists in the Las Vegas rental and repair decision reversed her judgment and held that the Miles Bauer tender letter, which is basically the same as the one we have in our case, was sufficient as a matter of law to be a tender. It did leave her judgment untouched to the extent that she found there was a disputed issue of material fact as to delivery, but it's unpublished. There's a lot of dynamics going on there. I'll also note, your honors, three other cases have cited Las Vegas rental and repair since it came out, I believe in November of 2019. Two district court decisions that cited it for a completely unrelated proposition, and then one case by the Nevada Court of Appeals that distinguished it to the facts and the record on that case and said it did not apply to another case where SFR had filed a notice of supplemental authority similar to this case here, saying that the same circumstances apply. So that's the context for Las Vegas rental and repair. The specific record in that case also is completely different from this case. In Las Vegas rental and repair, unlike this case, delivery of the check and the issue of the run slip were squarely presented to the trial court, and indeed that's why it was part of the ruling in that case. In volume two of the appellant's appendix in that case, there were four instances where NAS's corporate representative testified that at the relevant time NAS had a policy of making copies of the correspondence from Miles Fowler. That's volume two, pages 312, 319, 328, and 337. And all four of those instances, yes? Counsel, I want to go back to your question about waiver, because I think you did argue that this objection was not raised in the district court. But in ER 118, there was a dispute about the fact of delivery. The bank provides no second letter with the check were delivered to NAS. How or why? Reportedly rejected. No run slip or certificate of mailing had been produced. And nothing in NAS's record shows receipt, etc. So it does seem that it was raised. So if you would turn to the facts of this case and respond on the merits as to why these absences of expected records pursuant to their policy doesn't get past the summary judgment standard. Absolutely, your honor. I do want to clarify. The waiver is to the issue of the run slip. There's one sentence in 118 addressing the run slip. It does not invoke the Doug Miles testimony that we're talking about an argument. We contend that the issue as to the NAS file copies was not preserved. But there's more to it to that one. So if that one's teed up, then there's more to talk about. Specifically, I was talking about the run slip earlier. Would you just please talk about the merits? You have three minutes left, and I appreciate hearing why you don't think that there is an issue of fact here. Of course, your honor. So on the merits, regarding the NAS copies, this was addressed squarely in our reply brief and reproduces the only evidence in this case regarding what sort of policy NAS had about record keeping. Under federal rule of evidence 8037, the absence of a regularly kept record, a business record, is only admissible if you establish the threshold requirement that the absence means something. And that's intuitive, your honors. Of course, you can't simply say if a file is missing, if it wouldn't otherwise be there, that that has any impact. And in our case, the only testimony in the record regarding NAS's record keeping practices came from a deposition given by Chris Jorgensen. We cite this in our brief. I believe it's on pages 111 through 112 of the record excerpts where Mr. Jorgensen testified unequivocally that after April 2010, NAS had previously had a policy of making copies of tender checks when it received them from Miles Bauer. But after that point, including September 2011, the time frame that's relevant to our case, it abandoned that policy. It didn't do that anymore. Instead, what it did was it trained its receptionist to look at the check, look at the check amount when it came in the door, see if the check amount was enough to pay how they calculated the super priority amount. And if it was not, they handed it back to the Miles Bauer runner. So the absence of a copy of that check does not mean anything. It doesn't tell the court anything. It doesn't create those two competing pieces of evidence that would lead. Can I ask just a related question? Opposing counsel said that the screenshot was not meaningful because testimony from Rock Young said that the screenshot of that log information was not documenting what had occurred. First of all, is that correct? And second of all, was that raised to the district court? Your Honor, that was not raised to the district court. It was in the record in the sense that that transcript was in there, but it was never linked to the whether the screenshot was indicative of what it said it was. And also to be very clear, that testimony was from a different case. Mr. Young was looking at records in a different case and testifying about them at trial. And it's very difficult to translate what he's looking at on that transcript to what's in existence here. And further, Your Honor, I'll point that Mr. Miles' testimony that's in the record on pages, I believe it's 359 and 360. He says that the pro-law case management screenshot is what told him that Miles Bauer had sent a check. It's what he interpreted as the final word. And I want to be very clear, Your Honors, in that case that we're pulling this testimony from, the trial court decided that there had been a delivery of the on appeal. So the fact finders in that case... Excuse me, counsel. Was that after a trial or bench trial or was that on summary judgment that that decision... It was after trial, Your Honor. So the standard would be different. Different question. It would be. So to go to the NAS records, they absolutely do not carry weight here. They don't create a disputed issue in this case. And SFR didn't introduce any evidence saying that the something in NAS's file is indicative of anything. With that, I see my time has expired. I'm happy to answer any questions from the court. All right. Thank you, Your Honors. Sorry. I just want to clarify two issues. I'm not arguing that NAS should have a copy of the letter with the check in the file. What I'm arguing is that we know from the testimony that in instances where NAS could not accept the check, they handed it back to the runner. And I think opposing counsel confirmed that in his argument. So what we know from that, from Doug Miles's testimony at excerpts of record 358, Doug Miles Bauer had the policy of then stamping the check voided and then saving it to that file to confirm it was rejected. And did you raise that to us? Yes, we did, Your Honor. We raised it at page five of our opposition. It's the ECF 129, and I believe it's excerpt of record 118. But yes, we... Where did you raise it to the district court? We said there was for the idea of no run slip, no evidence of delivery. It's a voided check. Where did you raise the voided check issue? It should have been in the same area, Your Honor. It should have been in that same section of disputed facts. So that's at ECF 129? Yes. In the record? Yes, it should be in that same section. It should be, Your Honor. I don't have it in front of me at this very moment. I have other people in my office that are trying to look it up, but it should be. Thank you. I should say, Your Honor, I will... And I also want to add, though, some of the arguments, you have to remember, the bank is the one who filed the motion for summary judgment. So our opposition was limited to what they've raised. They didn't raise anything about the pro-law screenshot. I thought it was your obligation to create a genuine issue material fact by citing invisible evidence. It is, Your Honor. What I'm saying is, we argued. All they argued was, we have a letter, and it was sent. They just conclusively made that a prima facie case that they had delivered, and it was your obligation to raise a genuine issue material fact. And we did. Yes, we did. We talked about how there would be evidence of delivery via the runner, the run slip, and it would be returned. What I'm arguing, Your Honor, is we had some limitation on what you could raise. I guess I'm not aware of that. No, and I'm not saying that. What I'm saying is, though, when counsel argues, well, they never talked about the pro-law screenshot having this meaning. What I'm arguing is that there was no need for us, because in their motion for summary judgment, they didn't argue that. And I imagine they didn't argue that. I'm sorry. Did you raise that argument to the district court? I'm confused now. You did or did not raise it to the district court? I'm sorry. I'm covering the part where counsel argued we never made argument about what the pro-law screenshot entries meant. And my argument is, they never interpreted them the way they do in the appellate briefing. So there was no reason for me to correct any misinterpretation. On appeal, in their answering brief, they did assign an interpretation that is contradicted by Rock Young's testimony. So, yes, we did raise that. So I'm just highlighting as to why there was no reason for us to argue that in our opposition at the lower level, because they never claimed that the pro-law screenshot was the prime facia evidence of delivery. It was simply, here's our letter. On its face, it was sent. And they just made that conclusion. So I just wanted to clarify that. Had they made that interpretation of those pro-law screenshots, we would have absolutely highlighted that. But at the time... Excuse me. If I understand you correctly, I want to be sure I do. You're saying that you didn't raise it, but they also had not raised it. They did not rely on those screenshots before the district court in their motion. Is that correct? Correct, Your Honor. Yes, that's what I'm saying. Miles' affidavit wasn't raised in the... I thought Miles' affidavit was what was submitted to the district court. And that affidavit relied on the information from the screenshot, I thought. The affidavit was provided. What I'm saying is that they never argued that these screenshots and the entries in there prove we delivered it. They just made a conclusory statement that we tendered. And if you look at the district court's order, he doesn't cite to anything as to what actually proved delivery. So I'm just commenting on opposing counsel's suggestion that for the first time we're raising the interpretation of the pro-law screenshots. In fact, it was them who raised it for the first time in their answering group. So we absolutely believe that it's before this court, if that's what they're going to argue. Because the interpretation is contradicted by Rock Young's testimony. It's quite simply not... Thank you, counsel. Thank you, Your Honor. That case just started to be submitted. We appreciate the arguments from both counsel.
judges: Tashima, Graber, Ikuta